UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SWISSMARINE PTE. LTD., <br><br> Plaintiff, <br><br> v. <br><br> AES ANDES S.A. (f/k/a AES GENER S.A.) <br><br> Defendant. | CIVIL ACTION NO. <br><br> 24-cv-_____ <br><br> ADMIRALTY RULE 9(h) |

## VERIFIED COMPLAINT

Plaintiff SWISSMARINE PTE. LTD. ("**SwissMarine**" or "**Plaintiff**") files this Verified Complaint against Defendant AES ANDES S.A. (f/k/a AES GENER S.A.) ("**AES**" or "**Defendant**"), stating admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("**Supplemental Rule B**"), and alleges as follows:

## PARTIES

1. Plaintiff is an entity existing under the laws of Singapore.

2. On information and belief, Defendant is an entity existing under the laws of Chile and is a producer and distributor of electricity.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333(1) because this action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

1

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Rule B(1)(a) of the Supplemental Rules.

# FACTS

5. On or about August 16, 2021, SwissMarine, as owners and, AES, as charterers, entered into a contract of affreightment[1] (the "**COA**") for the provision of maritime transportation of cargo.

6. On or about May 17, 2022, AES chartered the vessel TERN BULKER (the "**Vessel**") from SwissMarine under the COA for transportation of Steam Coal in bulk to be loaded in Puerto Bolivar, Colombia and discharged at Las Ventanas, Chile (the "**Discharge Port**").

7. On or about November 28, 2022, the Vessel loaded approximately 50,254MT of Steam Coal in Bulk at Puerto Bolivar, Colombia.

8. On December 15, 2022, at 13:00, the Vessel arrived at the Discharge Port and validly tendered notice of readiness ("**NOR**") pursuant to the COA. Pursuant to the COA, laytime commenced 12 hours after valid tender of NOR – on December 16, 2022, at 01:00.

9. On December 20, 2022, at 08:04 (after 3.3500 days), the agreed upon laytime expired and demurrage, owed by AES to SwissMarine pursuant to the COA, began to accrue.

10. On December 22, 2022, the Vessel was fourth in the vessel line-up to berth at Pier no. 5 of the Discharge Port. The Estimated Time at Berth was January 9, 2023.

---

[1] In essence, a maritime contract of affreightment is "an agreement for the carriage of goods by water, esp. by more than one voyage between specified ports over a specified period on payment for each voyage performed. A contract of affreightment may employ a bill of lading, a charterparty, or both to ship the goods." CONTRACT OF AFFREIGHTMENT, Black's Law Dictionary (12th ed. 2024).

11. SwissMarine understands that on December 22, 2022, two days after the Vessel began accruing demurrage, a fire occurred at the Discharge Port. During this time the Vessel remained on demurrage.

12. On the same day (i.e., December 22, 2022), AES sent a message to SwissMarine titled "[Purported] Notice of Force Majeure Event due to fire at conveyor belts Ventanas discharge port // MV Tern Bulker" (the "**Purported FM Notice**"). Because, *inter alia*, the Vessel was already on demurrage at the Discharge Port, a Force Majeure event would not constitute an exception to the running of laytime or demurrage. The COA expressly excluded purported Force Majeure events from constituting exceptions to the running of demurrage if the vessel was already on demurrage.

13. Subsequently, it came to appear that AES challenged the running of demurrage on the basis that a directive from Chilean authorities constituted an exception to demurrage. SwissMarine disagrees with that assertion.

14. On January 6, 2023, January 12, 2023, and January 25, 2023, while the Vessel remained on demurrage, SwissMarine sent AES provisional demurrage statements, noting that demurrage was continuing to accrue.

15. On February 21, 2023, the Vessel commenced discharge operations and completed discharge operations on March 4, 2023. At the time discharge operations concluded, the Vessel had been on demurrage for 74 days 00 hours and 36 minutes.

16. On March 6, 2023, SwissMarine provided AES with its final statement of freight, containing the demurrage accrued at the Discharge Port, the laytime statement, and the Vessel's statement of facts. The demurrage invoiced for the Discharge Port amounted to USD 1,699,688.03 (the "**Demurrage Invoice**"), calculated pursuant to the COA.

17. It was not until July 13, 2023, that AES made payment of an undisputed portion of demurrage in the amount of USD 880,883.00 (the "**Undisputed Demurrage**").

18. Demurrage in the amount of USD 818,805.03 remains outstanding (the "**Outstanding Demurrage**").

19. A COA is a quintessential maritime contract. By failing to pay the Outstanding Demurrage, AES breached a maritime contract resulting in damages to SwissMarine in the amount of at least USD 818,805.03 plus interest, costs, and attorneys' fees.

20. In or about March 2024, as a result of AES's failure to pay the Outstanding Demurrage, arbitration proceedings were commenced between the parties pursuant to the COA (the "**Arbitration Proceedings**"). In that regard, the COA states that the arbitration proceedings shall be conducted in accordance with the Rules of the Society of Maritime Arbitrators, Inc. and in the City of New York.

21. The Arbitration Proceedings remain ongoing.

**Attorneys' Fees and Arbitration**

22. Pursuant to the COA, in the event SwissMarine is the prevailing party in any arbitration under the COA, AES shall pay SwissMarine's reasonable legal fees and expenses incurred in connection with such arbitration, as well as its own legal fees and expenses.

23. SwissMarine currently estimates its costs and attorneys' fees at USD 150,000.00.

24. SwissMarine is entitled to a minimum of five percent per annum post-judgment interest rate pursuant to the COA. SwissMarine reserves all rights to seek a higher post-judgment interest rate.

25. SwissMarine reserves all rights to seek increased security as may be needed for the arbitration. Likewise, SwissMarine reserves all rights to seek and recover the full quantum of its damages, attorneys' fees, costs, interest, and other expenses in the Arbitration Proceedings.

**Supplemental Rule B Allegations**

26. Paragraphs 1 through 25 of this Verified Complaint are repeated and realleged as if the same were set forth here at length.

27. Plaintiff reserves all rights to have the underlying merits of this dispute with AES resolved by, and to recover the full amount of its losses, damages, attorneys' fees, costs, interest, and other expenses from Defendant in the Arbitration Proceedings.

28. Plaintiff brings this action solely to obtain *quasi in rem* jurisdiction over Defendant and to secure the claim against Defendant more fully described above.

29. After a diligent search, and as further set forth in the accompanying declaration of Eva-Maria Mayer, Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

30. Plaintiff is accordingly entitled to attach and garnish Defendant's property within this District pursuant to the provisions of Supplemental Rule B.

31. On information and belief, Defendant has or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court.

32. On information and belief, Defendant's property subject to attachment and garnishment and located within this District includes, but is not limited to, any property belonging to, and any debts owed to, Defendant, which may be held by Citibank N.A. New York Branch as garnishee (the "**Garnishee**"). The basis for the foregoing information and belief, are prior

transactions between SwissMarine and AES. Review of prior payments indicates that AES transferred significant sums of money from an account held with Citibank N.A. in New York.

33. Plaintiff therefore seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching, *inter alia*, any property and debts of Defendant AES located within the District, for the purpose of obtaining *quasi in rem* jurisdiction over Defendant AES and to secure Plaintiff's claims, as described above.

**WHEREFORE**, Plaintiff prays for the following:

(A) That since Defendant cannot be found within this District pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, against all property, tangible or intangible, including assets, cash, monies, funds, accounts, assets in checking, savings, escrow or other accounts, accounts payable, credits and/or debits, balances, certificates of deposit, contents of safety deposit boxes, letters of credit or proceeds therefrom, effects, debts, proceeds from insurance policies, receivables, stocks, bonds or other securities, sums owing under a credit agreement, or any other contractual agreements and/or other obligations, up to the amount of USD 965,805.03 (inclusive of the principal demurrage claim of USD 815,805.03 plus USD 150,000.00 for currently estimated attorneys' fees related to the arbitration) together with interest, costs and attorneys' fees, belonging to, due or being transferred to, from or for the benefit of Defendant AES Andes S.A. (f/k/a AES Gener S.A.) or in its name, or within the possession, custody, or control of the Garnishee, and that all persons claiming any interest in the same be cited

to appear and pursuant to Supplemental Rule B answer the matters alleged in this Verified Complaint;

  (B) That this Court retain jurisdiction for purposes of confirming, and enforcing, any arbitral award(s) which may be obtained by SwissMarine against AES;

  (C) That this Court award Plaintiff the attorneys' fees and costs incurred in this action as applicable, and any applicable interest; and

  (D) For such other and further relief as the Court deems just and proper.

Dated: November 14, 2024

              Respectfully submitted,

              By:  /s/ Eva-Maria Mayer

              Eva-Maria Mayer
              Edward W. Floyd
              Floyd Zadkovich (US) LLP
              eva.mayer@floydzad.com
              ed.floyd@floydzad.com
              (617) 943 7957
              (917) 999 6914
              33 E 33rd Street, Suite 905
              New York, New York 10016

              *Attorneys for Plaintiff SwissMarine Pte. Ltd.*